# United States District Court

HULCHER SERVICES, INC. §
§
V. § CASE NO. 4:14-CV-231
§ Judge Mazzant
GREAT AMERICAN INSURANCE §
COMPANY §

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Great American Insurance Company's Motion for Summary Judgment (Dkt. #27) and Plaintiff's Motion for Partial Summary Judgment (Dkt. #31). After considering the motions, the responses, and the relevant pleadings, the Court finds that Defendant's motion should be granted in part and denied in part, and Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff Hulcher Services, Inc. ("Hulcher") provides derailment and rerailment services to various railroads, including Union Pacific Railroad ("Union Pacific"), pursuant to written contracts. Hulcher's headquarters are in Denton, Texas. On or about May 1, 2002, Hulcher entered into a derailment cleanup contract with Union Pacific, which required Hulcher to: (1) maintain insurance, including liability insurance with at least $5 million of limits per occurrence, and include Union Pacific as an additional insured; and (2) indemnify Union Pacific against loss "caused by [Hulcher's] breach of the agreement or the failure to observe the health and safety provisions of the agreement or any negligent activity or omission arising out of performance or nonperformance of this agreement" (Dkt. #27 at Ex. C, at 3-4, 10; Dkt. #31 at Ex. A-1 at 11). To satisfy the Union Pacific contract's insurance obligation, Hulcher purchased primary and umbrella liability policies. For the January 1, 2003 to January 1, 2004 policy period, Hulcher

obtained a CGL policy from Continental Casualty Company ("CNA") with limits of $1 million per occurrence (the "CNA Policy") (Dkt. #31, Ex. A-2).  The CNA Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  *Id*. at 5.  Union Pacific is an additional insured under the CNA Policy.

Hulcher also purchased an umbrella policy from Defendant Great American with $25 million limits per occurrence (the "Great American Policy") (Dkt. #27, Ex. A; Dkt. #31, A-3).  The insuring agreement of the Great American Policy provides, in pertinent part:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," ... that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

(Dkt. #27, Ex. A at 19; Dkt. #31, Ex. A-3 at 24).

In September of 2003, James Collins ("Collins"), a Hulcher employee, was injured while moving equipment to the site of a Union Pacific train collision near Beaumont, California, causing the derailment of more than twenty (20) cars.  *Collins v. Union Pacific R. Co*., 207 Cal.App.4th 867, 873 (Cal.App.4th Dist. 2012).  Collins was a member of the crew Hulcher assigned to the Beaumont derailment.  *Id*.  On September 8, 2003, Collins was guiding and directing a sideboom, operated by another Hulcher employee, under a power line when the sideboom's block fell and struck him on the head. *Id*.  Collins filed a worker's compensation claim against Hulcher and received benefits through Hulcher's worker's compensation insurer Continental Casualty Company ("CNA").  *Id*. at 876-78.  Collins filed suit against Union Pacific in California state court under the Federal Employers Liability Act ("FELA") alleging that (a) he

was an employee of Union Pacific at the time of his injuries; and (b) his injuries were caused by Union Pacific's negligence. Hulcher was not a party to the Collins Lawsuit.

Union Pacific and Hulcher notified CNA, who is also the commercial general liability insurer, of the Collins Lawsuit after it was filed, and CNA agreed to provide a defense to Union Pacific (Dkt. #31, Ex. B-1). Union Pacific and Hulcher also notified Great American of the Collins Lawsuit. Great American issued a reservation of rights letter to Union Pacific and based its reservation on the Great American Policy's Employee Exclusion (Dkt. #31, Ex. A-6 at 4-11).

In March of 2010, the Collins Lawsuit proceeded to trial. The jury was presented with three (3) issues for determination in the liability phase of the trial: (a) whether Collins was an employee of Union Pacific; (b) whether Union Pacific was negligent; and (c) whether Collins was also negligent. The jury determined that Collins was an employee of Union Pacific at the time of his injuries, Union Pacific was negligent, and Collins was not negligent. In a special verdict following the liability phase of the trial, the jury awarded Collins $3,945,493.93 for past and future economic loss and past and future non-economic loss. Collins later accepted a remittitur of this award in the amount of $2,695,493.93. After subtracting from the amount of the worker's compensation lien from the remitted amount, the trial court entered an amended judgment in favor of Collins in the amount of $2,558,826.93, together with pre- and post-judgment interest and costs (the "Collins Judgment") (Dkt. #27, Ex. F). Union Pacific appealed the trial court's judgment, but the appellate court affirmed (Dkt. #27, Ex. A-8). *Collins*, 207 Cal.App.4th at 885. After the appeal, CNA contributed its policy limits (plus accrued interest) on Union Pacific's behalf toward satisfying the judgment. Great American refused to provide coverage to Union Pacific for the judgment amount (plus accrued interest) above the CNA Policy's $1 million limits. Union Pacific demanded that Hulcher indemnify it for the judgment

amount above the CNA policy, and Hulcher did so in the amount of $1,980,833.40. Thereafter, Hulcher sought coverage from Great American, which denied coverage based on the Cross-Suits Exclusion.

Hulcher now brings suit against Great American for (1) breaching its insurance policy with Hulcher by refusing to pay the amount Hulcher assumed under an "insured contract"; (2) in the alternative, under the equitable subrogation doctrine for refusing to indemnify Hulcher for its payment to another party following Great American's wrongful denial of coverage to that party; (3) for violating Chapter 541 and 542 of the Texas Insurance Code; (4) for pre-judgment interest; and (5) for Hulcher's reasonable and necessary attorneys' fees. In its motion for partial summary judgment, Hulcher also reserves the right to seek a factual determination regarding the amount of damages recoverable for any alleged breach of contract and Texas Insurance Code violations, including the amount of attorneys' fees.

On February 13, 2015, Great American filed its motion for summary judgment (Dkt. #27). On March 9, 2015, Hulcher filed its response (Dkt. #35), and on March 23, 2015, Great American filed its reply (Dkt. #40).

On February 20, 2015, Hulcher filed its motion for partial summary judgment – Hulcher did not move for summary judgment on its claims for statutory bad faith (Dkt. #31). On March 20, 2015, Great American filed its response (Dkt. #39). Hulcher filed its reply on March 27, 2015 (Dkt. #41). On that same date, Hulcher also filed a motion for leave to supplement its summary judgment evidence (Dkt. #43), and leave was granted (Dkt. #47, #48). On May 13, 2015, Great American filed a motion for leave to file a surreply, and its proposed surreply (Dkt. #49, #50). The Court granted the motion for leave (Dkt. #52).

# LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc*., 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain

from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

In this lawsuit, Hulcher sued Great American in two separate capacities: (1) in its individual capacity; and (2) as an equitable subrogee of Union Pacific. In its individual capacity, Hulcher asserts that it is entitled to coverage as the named insured under the Great American Policy for its payment toward satisfaction of the Collins Judgment. Hulcher also asserts claims against Great American under the Texas Insurance Code. In its capacity as equitable subrogee, Hulcher contends that the Great American Policy provides coverage for the Collins Judgment directly to Union Pacific as an "Insured."

The Great American policy was issued to Hulcher in Texas, and the parties agree that Texas law applies to the interpretation of the policy (Dkt. #27, Ex. A at 2). TEX. INS. CODE 21.42. Under Texas law, insurance policies are interpreted under the rules of interpretation and construction that apply to contracts generally. *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. CBI Indus., Inc*., 907 S.W.2d 517, 520 (Tex. 1995). The court's primary concern in construing an insurance policy is to ascertain the true intent of the parties as expressed in the written agreement. *Id*.; *Republic Nat'l Bank of Dallas v. Nat'l Bankers Life Ins. Co*., 427 S.W.2d 76, 79-80 (Tex. Civ. App. – Dallas 1968, writ ref'd n.r.e.) ("In this connection it must be emphasized that it is not the intention which the parties may have had, but failed to express in the instrument, but it is the intention which by said instrument they did express."). Courts construe an insurance policy's terms as a whole and consider all terms not in isolation, but within the context of the entire policy. *Hartrick v. Great Am. Lloyd's Ins. Co*., 62 S.W.3d 270, 274 (Tex. App. – Houston [1st Dist.] 2001, no pet.); *Forbau v. Aetna Life Ins. Co*., 876 S.W.2d 132, 133 (Tex. 1994). No

one phrase, sentence, or section should be isolated from its setting and considered apart from the policy's other provisions. *Admiral Ins. Co. v. Trident, NGL, Inc*., 988 S.W.2d 451, 454 (Tex. App. – Houston [1st Dist.] 1999, pet. denied); *Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 626 (5th Cir. 1998). Instead, an insurance policy's preferred interpretation must provide meaning to every provision and not render any policy term meaningless. *Kelly Coppedge, Inc. v. Highlands Ins. Co*., 980 S.W.2d 462, 465 (Tex. 1998).

The terms of an insurance policy are unambiguous as a matter of law if they can be given definite or certain legal meaning. *Nat'l Union Fire Ins. Co*., 907 S.W.2d at 520. Where an insurance policy's terms are unambiguous, they must be given their plain, ordinary and generally accepted meaning, unless the policy shows that the terms have been used in a technical or different sense. *Ramsay v. Maryland American Gen. Ins. Co*., 533 S.W.2d 344, 346 (Tex. 1976). Mere "[l]ack of clarity does not create an ambiguity, and not every difference in the interpretation of a contract… amounts to an ambiguity." *Universal Health Services, Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (internal quotations omitted); *United Nat'l Ins. Co. v. Mundell Terminal Services, Inc*., 740 F.3d 1022, 1027 (5th Cir. 2014) ("A provision is not ambiguous simply because the parties interpret a policy differently"). If a policy, or terms within the policy, is susceptible to more than one reasonable interpretation, however, the Court must adopt the construction that most favors the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co*., 811 S.W.2d 552, 555 (Tex. 1991).

The insured bears the burden of establishing that a claim asserted against it falls within the scope of coverage provided by the policy. *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). If the insured satisfies this burden, the burden then shifts to the insurer to establish that one or more exclusions of the policy preclude coverage. *Id.*

The Court must strictly construe exceptions or limitations to coverage against the insurer and in favor of the insured. *Evanston Ins. Co. v. Atofina Petrochemicals, Inc*., 256 S.W.3d 660, 668 (Tex. 2008). The Court must adopt the insured's construction of an exclusionary clause as long as that construction is not unreasonable, even if the insurer's construction appears more reasonable or a more accurate reflection of the parties' intent. *Id*. Therefore, an insurer must express its intent to exclude a particular risk in clear and unambiguous language. *Id*.

Great American first argues that Hulcher voluntarily paid the Collins Judgment, which it argues precludes all of Hulcher's claims as a matter of law. To be successful in its claim on behalf of Union Pacific, Hulcher must establish that its payment of the Collins Judgment was involuntary in order to be entitled to equitable subrogation. *Frymire Engineering Co. v. Jomar Int'l, Ltd*., 259 S.W.3d 140, 145-46 (Tex. 2008). It is also an essential element of Hulcher's direct claim for coverage under the Great American Policy because Hulcher must establish that the Collins Judgment was a liability "assumed by [Hulcher] under an 'insured contract,'" as required by the Great American Policy's insuring agreement. The insuring agreement of the Great American Policy states the following:

> We will pay those sums on behalf of the "Insured" in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," … that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

(Dkt. #27. Ex. A at 19; Dkt. #31, Ex. A-3 at 24).

It is undisputed that, under the terms of its contract with Union Pacific, Hulcher is not required to indemnify Union Pacific against loss caused by Union Pacific's sole negligence:

> A. The [Hulcher] shall indemnify and hold harmless [Union Pacific], its affiliates, their officers, agents and employees, against and from any and all liability, loss damages, claims, demands, costs and expenses of whatsoever nature, including court costs and attorneys' fees, arising from or growing out

of any injury to or death of persons whomsoever (including officers,, agents and employees of [Union Pacific], of [Hulcher] and of any subcontractor, as well as other persons) or loss of or damage to property whatsoever (including property of or in the custody of [Union Pacific], [Hulcher] or any subcontractor as well as other property). The right to indemnify shall accrue when such injury, death, loss or damages is caused by [Hulcher's] breach of the agreement or failure to observe the health and safety provisions of the agreement or any negligent activity or omission arising out of the performance or nonperformance of this agreement. However, [Hulcher] shall not indemnify [Union Pacific] when the loss is caused by the sole negligence of [Union Pacific].

(Dkt. #39, Ex. C at 10, ¶ 21). The Court agrees with Great American's argument that Hulcher's contract with Union Pacific did not require Hulcher to indemnify Union Pacific against loss caused by Union Pacific's sole negligence.[1] The question now facing the Court is whether or not this issue was determined by the underlying Collins litigation.

In the Collins litigation, the jury was instructed that Collins and his co-worker Dinde Barnett ("Barnett") claimed that they were employed by both Union Pacific Railroad Company and Hulcher Services, Inc., and that at the time of the incident they were employees of Union Pacific, although they were primarily employed by Hulcher (Dkt. #39, Ex. E at 7). The jury was instructed that to determine whether these two employees were Union Pacific employees:

[Y]ou must first decide whether Union Pacific Railroad Company had the right to control their work, rather than just the rights to specify the result. It does not matter whether Union Pacific Railroad Company exercised the right to control. Sharing information or coordinating efforts between employees of two companies, by itself, is not enough to establish the right to control.

*Id*. The jury was instructed that:

A railroad must use reasonable care under the circumstances to provide its employees with a reasonably safe place to work and with reasonably safe and suitable tools, machinery, and appliances. The reasonableness of care depends on the danger associated with the workplace or the equipment. The failure to use reasonable care is negligence. A railroad is not negligent if, using reasonable

---

[1] It is also undisputed that the sole negligence provision in the contract does not contain an exception for FELA cases, where many railroad contracts do have such exceptions. *See, i.e., Lone Star Indus., Inc. v. Atchison, Topeka & Santa Fe Ry*, 666 S.W.2d 376 (Tex. App. – Beaumont, 1984, writ ref'd n.r.e.).

> care, it could not reasonably have foreseen that the particular condition could cause injury.

Id. at 8. The underlying court's instruction on causation states: "Union Pacific Railroad Company's negligence, if any, was a cause of James Russell Collins's harm if it played any part, no matter how small, in bringing about the harm, even if other factors also contributed to the harm." *Id*. at 9. The jury was also instructed that Union Pacific claimed that Collins was negligent and contributed to his own harm. *Id*. at 10.

Accordingly, the jury found that both Collins and Barnett were employees of Union Pacific at the time Collins was injured, that Union Pacific was negligent under FELA for the injuries sustained by Collins, and that Collins was not negligent (Dkt. #39, Ex. F at 3). Judgment was entered in accordance with these findings by the trial court. *Id*. Union Pacific later appealed the judgment of the trial court, and argued that there was "insufficient evidence to support the jury's finding that [Union Pacific] had a right to control the details of [Collins'] work such that [Collins] could be considered a 'special employee' or a 'borrowed servant.'" *Collins*, 207 Cal.App.4th at 878. The appeals court disagreed and affirmed the decision of the jury finding that substantial evidence supported the jury's decision that "Union Pacific had the right to control the work of [Collins] and the coworker whose negligence caused the accident at the time of plaintiff's injury." *Id*. at 880.

Great American argues that the Collins Judgment was for loss caused by Union Pacific's sole negligence. Great American contends that the jury found that Collins and Barnett were both employees of Union Pacific at the time of Collins' injury, and, thus, the injuries were caused by the sole negligence of Union Pacific. Great American asserts that Hulcher's liability under the indemnity provision of its contract with Union Pacific must be determined by the findings of the jury and the judgment that was entered in the Collins lawsuit.

Hulcher, on the other hand, asserts that the Court must reject Great American's argument because it (1) overstates the jury's finding in the Collins lawsuit and how it impacts Hulcher's indemnity obligation; and (2) ignores the undisputed evidence establishing that Union Pacific's sole negligence did not cause Collins' injuries. Hulcher argues that its own negligence contributed to the Collins' injuries, and that the jury was not asked to find whether Union Pacific was solely negligent for Collins' injuries. Hulcher contends that it may introduce evidence that Collins' loss was not caused by Union Pacific's sole negligence. Hulcher goes on to argue that it was negligent because one of its employees, Barnett, negligently caused Collins' injuries and that a California Occupational Safety and Health Appeals ("OSHA") Board investigation concluded that Hulcher's equipment was not maintained in a safe manner to prevent it from loosening and falling, which caused Collins' injuries. Hulcher received a citation from OSHA for a violation of standard T8CCR 3328(e), and was fined for failing to properly secure the block on the crane operated by Barnett causing the block to detach and injure Collins.

Under Texas law, "the facts actually established in the underlying suit control [the insurer's] duty to indemnify." *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 744 (Tex. 2009). Hulcher's liability under the indemnity provision of the Union Pacific contract must be determined by the findings of the jury and the judgment that was entered in the Collins litigation. *See, generally, Payne & Keller, Inc. v. P.P.G. Indus., Inc.*, 793 S.W.2d 956 (Tex. 1990). The jury in this case found that both Collins and Barnett, while generally Hulcher employees, were employed by Union Pacific at the time of Collins' injuries. In addition, the jury found that Union Pacific was negligent under FELA for the injuries sustained by Collins, and that Collins was not negligent (Dkt. #39, Ex. F at 3).

During the state court litigation, the Hulcher witnesses testified that the equipment at the Hulcher yard belonged to Hulcher, and Union Pacific never assisted Hulcher with the operation of the equipment (Dkt. #39, Ex. Q-1 at 9). In addition, the Union Pacific Foreman General testified that the 583 tractors and the other equipment were maintained, modified, repaired, and operated by Hulcher. *Id*. Collins testified that he had never seen a 583 tractor owned or operated by Union Pacific personnel. *Id*. Union Pacific did not provide any of the equipment for a mail line derailment, and did not even have the 583 tractors needed to do the job, which is why it called Hulcher in the first place to clean up the derailment. *Id*.

During its appeal of the trial court's judgment, Union Pacific argued that there was "insufficient evidence to support the jury's finding that [Union Pacific] had a right to control the details of [Collins'] work such that [Collins] could be considered a 'special employee' or a 'borrowed servant.'" *Collins*, 207 Cal.App.4th at 878. The appeals court disagreed and affirmed the decision of the jury. The appeals court found that substantial evidence supported the jury's decision that "Union Pacific had the right to control the work of [Collins] and the coworker whose negligence caused the accident at the time of plaintiff's injury." *Id*. at 880. The appeals court stated that "[t]he determination of whether a worker is a borrowed servant is accomplished by ascertaining who has the power to control and direct the servants in the performance of their work, distinguishing between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." *Id*. at 879. Specifically, the appeals court stated:

> In the present case, the jury heard testimony from both Hulcher and Union Pacific employees describing the working relationship of Hulcher employees vis-à-vis Union Pacific derailments. Hulcher employees were required to follow Union Pacific safety rules. Union Pacific supervised work at the derailment site. A Union Pacific supervisor or manager could tell a Hulcher employee to stop doing something if something was being done unsafely. He could also tell a Hulcher

manager to remove a Hulcher employee. On one occasion, a Union Pacific supervisor told a Hulcher manager to get rid of another Hulcher manager who refused to give workers a two-hour break with food and water when working in El Centro in the heat. Union Pacific would order the type of equipment it wanted Hulcher to bring to a particular derailment. Union Pacific told Hulcher what work it wanted done (whether to rerail or remove cars).

Union Pacific surveyed the area to determine what hazards were present and would mark potentially dangerous power lines. If proper clearance was not possible, Union Pacific would have the power shut off or have the lines dropped. When working on a specific rerailment, Union Pacific met with Hulcher managers to plan the work. Also, Union Pacific would explain any safety hazards. Hulcher must seek Union Pacific approval before bringing equipment down to the derailment site and must follow Union Pacific's directions at the site.

Additionally, by contractual agreement, Union Pacific was responsible for facilitating Hulcher's ingress and egress at a derailment site, indemnifying Hulcher against any property damage that might be caused by heavy equipment traversing private property. This required Hulcher to obtain approval from Union Pacific of the intended route to the derailment before crossing through public or private property. Although Union Pacific did not tell Hulcher employees how to operate their equipment, it could and would tell a Hulcher crew what it wanted done and how to do it. A Union Pacific supervisor might give signals or directions to Hulcher employees directing them in the operation of Hulcher equipment.

Reviewing the evidence in the light most favorable to the judgment, there is substantial evidence to support the jury's finding that Union Pacific had the right to control the work of plaintiff and the coworker whose negligence caused the accident at the time of plaintiff's injury.

*Id*. at 879-80.

Great American contends that Hulcher is precluded by issue preclusion from avoiding or relitigating the findings of the jury in the Collins litigation in this Court. *See West Hills Park J.V. v. Home Depot USA*, 587 F. App'x 89, 92-93 (5th Cir. 2014) (holding that jury's finding of negligence against purported indemnitee [West Hills Park] in underlying trial was binding on West Hills Park in subsequent indemnity action on alleged contractual indemnitor [Home Depot] despite the fact that Home Depot was not a party to the underlying case at the time of trial and despite the fact that the jury did not consider the negligence of Home Depot); *see also Williams*

*v. The Home Depot USA, Inc.*, No. H-10-2493, 2013 WL 5281729, at *14-16 (S.D. Tex. Sept. 18, 2013) (trial court's opinion in *West Hills Park*, holding issue preclusion precludes relitigation of jury's findings in contractual indemnity action, which holding was affirmed on appeal).

"In Texas, issue preclusion requires that the party against whom preclusion is asserted must have been a party (or in privity with a party) in the original lawsuit." *Williams*, 2013 WL 5281729, at *15 (citing *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990)). "The facts sought to be litigated in the second action must have been fully and fairly litigated in the first action." *Id*. (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc*., 962 S.W.2d 507, 519 (Tex. 1998)). "The facts must also have been essential to the first action's judgment." *Id*. (citing *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994)).

While it is true that Hulcher was not a party to the Collins litigation, Hulcher was in privity with Union Pacific, who was a party to the Collins litigation. The Court will now turn to the issue of whether the sole negligence of Union Pacific was fully and fairly litigated in the underlying litigation. As stated above, Hulcher contends that Union Pacific was not solely negligent because it was also negligent. Hulcher states that Barnett was its employee, and Barnett actually caused the accident that caused Collins' injuries. Hulcher also asserts that it failed to maintain its equipment in a safe manner, which was identified by a California OSHA Board investigation that concluded that Hulcher's equipment was not maintained in a safe manner to prevent it from loosening and falling (Dkt. #43, ¶ 4). The Court agrees that the issue of whether Union Pacific was solely negligent for Collins injuries was not determined or argued to the jury in the underlying Collins litigation. The jury was never asked to determine whether Hulcher was also negligent, and, unlike in the *West Hills Park* case, the issue was never argued nor submitted to the jury for consideration.

In *Williams v. The Home Depot USA, Inc.*, No. H-10-2493, 2013 WL 5281729, at *14-16 (S.D. Tex. Sept. 18, 2013), the federal district court considered whether West Hills Park was entitled to indemnification from Home Depot for a judgment entered in an underlying litigation in which the jury found West Hills Park liable for negligence and strict liability. *Williams*, 2013 WL 5281729 at *8-9. As in the present case, the jury in the underlying litigation in *Williams* was not asked to make any determination of the comparative fault of West Hills Park and the settling party, Home Depot. *Id.* at *8. The jury was asked: (1) whether the activity, if any, on West Hills Park's real property was a producing cause of a loss of lateral support to the Boxcar Properties, Ltd.'s ("Boxcar Properties") property?; (2) whether the negligence, if any, of West Hills Park proximately caused the occurrence in question?; and (3) what sum of money would fairly and reasonably compensate Boxcar Properties for their damages? The jury in *Williams* answered "Yes" to questions one (1) and two (2) and awarded damages to Boxcar Properties. *Id.* West Hills Park then asserted before a federal district court that it was entitled to indemnification from Home Depot because it was actually Home Depot's negligence, and not West Hills Park's negligence, that resulted in the negligence and strict liability verdict. *Id.* at *9. The federal district court reasoned that, although the jury was not presented with specific questions regarding the liability of Home Depot, the jury was presented with substantial evidence and argument regarding any alleged liability of Home Depot. *Id.* at *9-10. The federal district court found that in considering the evidence and finding West Hills Park negligent and strictly liable, the jury clearly rejected the argument that Home Depot was also negligent. *Id.* at *16. The federal district court stated:

> In the state-court case, the jury was presented, and by its verdict rejected, West Hills Park's defense that it was not negligent on the basis that Home Depot's activities and omissions, not West Hills Park's, caused the damage to the Boxcars property. The jury was presented, and rejected, the defense that West Hills Park

had no obligation to conduct studies of how the development activities of clearcutting, excavation, and grading would impact adjoining land, and no obligation to give notice to Boxcar Properties about the development activities. And the jury was presented, and rejected, West Hills Park's theory that its activities and omissions were not activities on the land that could give rise to strict liability for loss of lateral support. These issues were determined in the state-court trial, verdict, and judgment.

*Williams,* 2013 WL 5281729, at *16.[2]  This result is not the same in the present case.  Although presented with evidence of Hulcher's involvement in the underlying litigation, the Collins jury did not consider the negligence of Hulcher or resolve the issue of whether Union Pacific was solely negligent for the loss.  Rather, in the FELA context, the jury merely answered the question of whether Union Pacific's negligence, if any, "played any part, no matter how small, in bringing about the harm, even if other factors also contributed to the harm."  This instruction on causation and the resulting answer by the jury is not sufficient to preclude a finding by the jury that Hulcher was also negligent, in addition to Union Pacific.  Therefore, the Court finds that there is a fact question as to whether Union Pacific was solely negligent for the loss, and summary judgment for Great American should be denied on this ground.

Assuming for the purposes of the remainder of this motion that Union Pacific is determined by a jury to not be solely negligent for Collins' loss, the Court finds that it is undisputed that the Great American Policy provides coverage for Hulcher's direct claim for insurance coverage.  However, Great American contends that coverage is excluded under the Cross Suits Exclusion of the Great American Policy for "[a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy" (Dkt. #39, Ex. A).

The language of the Cross Suits Exclusion states:

---

[2] This decision was affirmed by the Fifth Circuit Court of Appeals in *West Hills Park J.V. v. Home Depot USA*, 587 F. App'x 89, 92-93 (5th Cir. 2014) (holding that jury's finding of negligence against purported indemnitee [West Hills Park] in underlying trial was binding on West Hills Park in subsequent indemnity action on alleged contractual indemnitor [Home Depot] despite the fact that Home Depot was not a party to the underlying case at the time of trial, and despite the fact that the jury did not consider the negligence of Home Depot).

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CROSS SUITS EXCLUSION**

The following exclusion is added to Section IV-EXCLUSIONS:

Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.

(Dkt. #27, Ex. A).

Hulcher argues that to establish that the Cross Suits Exclusion applies to Hulcher's claim, Great American must demonstrate that Union Pacific is (1) an Insured and (2) covered under the Great American Policy. Great American contends that Union Pacific is not an Insured and that the underlying insurance, the CNA Policy, provides coverage for this claim. However, this is inconsistent with Great American's argument regarding the Employee Exclusion, discussed *infra*.

After further review of the policy, the Court finds that Great American's denial of Union Pacific's claim means that Union Pacific was not "covered under this policy" as required in the plain language of the Cross Suits Exclusion. Therefore, the Cross Suits Exclusion does not apply to bar coverage for Hulcher's direct claim for breach of contract. Accordingly, Great American's motion for summary judgment on this claim is denied; however, because a fact issue remains regarding Union Pacific's sole negligence, the Court finds that Hulcher's motion for summary judgment on this claim is also denied.

Turning now to Hulcher's claim for equitable subrogation, Great American argues that coverage for Hulcher's claim on behalf of Union Pacific is barred by the Employee Exclusion. Specifically, the Employee Exclusion states that coverage is excluded for "bodily injury" to an

employee of any "Insured" arising out of and in the course of employment by any "Insured" or while performing duties related to the conduct of any "Insured's" business, except to the extent such insurance is provided by the Schedule of Underlying Insurance, *i.e.*, the CNA CGL Policy (Dkt. #27, Ex. A). The underlying CNA CGL Policy contains an employers liability exclusion that is, in all material respects, identical to the Great American Policy's Employee Exclusion.

This exclusion specifically states that it does not apply "to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance." Hulcher asserts that the "most logical reading is that it applies when the underlying insurer provides payment for a claim brought by an employee and exhausts the underlying policy's limits" (Dkt. #35 at 27). Hulcher contends that this makes sense in connection with the intent of umbrella/excess coverage policies and comports with the plain meaning of the undefined term "provide," which means "to make something available" or "to supply something." *Id*. Accordingly, Hulcher argues that the exception to the exclusion applies when an underlying policy pays a claim and exhausts the underlying limits.

On the other hand, Great American argues that the fact that the underlying insurer decided to pay the claim does not automatically trigger Great American's coverage obligations. Great American asserts that there is no evidence that Union Pacific tendered Collins' claims under this policy, that CNA defended Union Pacific under this policy, or that CNA made any payment under this policy towards the Collins Judgment, much less payment of the policy limit. In addition, Great American contends that Hulcher does not point the Court to any provision or language of the CNA Policy that provides coverage to Union Pacific for Collins' claims. Great American asserts that the CNA Policy does not provide coverage to Union Pacific for Collins' claims because (1) Union Pacific is not named as an additional insured anywhere in the policy

and does not contain a blanket additional insured endorsement; and (2) the CNA Policy specifically excludes coverage for FELA claims.

The Court finds Great American's argument on this exclusion unpersuasive. Great American's only support for its legal proposition that the Court must conduct an independent coverage analysis of the underlying policy is an unpublished case that relied on language that was in an insuring agreement, rather than in an exclusion, like in the present case. *See Am. Home Assurance Co. v. Oceaneering Int'l, Inc.*, No. H-06-2105, 2008 U.S. Dist. LEXIS 41750, at *18-19 (S.D. Tex. May 22, 2008). Further, and perhaps most persuasively, the insuring agreement stated that the policy insured risks "as covered by" the underlying policy and that it "shall follow the insuring conditions of" the underlying policy, as opposed to this case where the exclusion states that the insurance must be "provided" by the underlying insurance carrier. *Id*. "An intent to exclude coverage must be expressed in clear and unambiguous language." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co*., 811 S.W.2d 552, 555 (Tex. 1991). If that intent is not expressed clearly and an ambiguity arises, courts must "adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Glover*, 545 S.W.2d at 761.

After reviewing the policy terms and provisions, the Court finds that the Employee Exclusion is ambiguous, and in such circumstances, if the interpretation advanced by the insured is reasonable, the Court must accept it. The Court finds that Hulcher's interpretation is

reasonable, and finds that coverage for Hulcher's claim for equitable subrogation is not excluded by the Great American Policy's Employee Exclusion.[3]

Great American also asserts that Hulcher cannot show that the Collins Judgment exceeded the Great American Policy's "Retained Limit." Great American argues that the policy describes the "Retained Limit" as "the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the 'Insured' during the Policy period" (Dkt. #27, Ex. A). Great American contends that despite its frequent requests to Union Pacific to provide it with information regarding its liability insurance policies that were in effect at the time of Collins' injuries, that Union Pacific failed to provide this information. However, Hulcher responds that Great American has been told numerous times that Union Pacific is self-insured for the first $25 million of any loss, and therefore, has no relevant policies responsive to Great American's request (Dkt. #35 at 30-31). Thus, the Court finds that Hulcher has established that the Collins judgment exceeded the "Retained Limit" as the applicable insurance policies listed in the Schedule of Underlying Insurance was the CNA Policy that was exhausted at $1 million. The Collins Judgment exceeded this amount.

Great American also argues that Union Pacific sustained no legally compensable damages as a result of the Collins Judgment. Great American argues that CNA and Hulcher paid the entirety of the Collins Judgment, and there is no evidence of actual damages. However, equitable subrogation is a legal fiction whereby an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of the third person. *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App. – Dallas 2008, pet. denied). Thus, as stated by Hulcher, by

---

[3] Hulcher also argues that Great American waived this argument when it withdrew its reservation of rights as to this exclusion. However, given its findings on the Employee Exclusion, the Court finds that it is not necessary to address the waiver argument.

its very nature, Hulcher's equitable subrogation claim assumes that Hulcher paid a debt on Union Pacific's behalf. Therefore, the Court finds that Plaintiff's equitable subrogation claim on behalf of Union Pacific is not precluded by the Employee Exclusion, exceeds the "Retained Limit," and there is no need for Hulcher to show additional damages. Accordingly, Great American's motion for summary judgment on this basis is denied on this claim. Since there is a fact issue remaining regarding whether or not Union Pacific's sole negligence was the cause of the loss, Hulcher's argument on this claim is denied.

Turning now to Hulcher's claims under Chapters 541 of the Texas Insurance Code, the Court finds that Great American's motion for summary judgment should be granted on this claim. To maintain a claim for an insurer's violation of this statute, a party must establish: (a) the insurer committed one or more of the acts prohibited by Chapter 541, and (b) these acts resulted in actual damages to the insured independent of the underlying contract claim. *See, e.g., Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (holding that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from wrongful denial of policy benefits."). Hulcher cannot succeed on its claim under Chapter 541 of the Texas Insurance Code because the summary judgment evidence and briefing establish that there is a bona fide dispute about coverage, and there are no damages alleged other than the wrongful denial of policy benefits. Thus, Great American is entitled to summary judgment on this claim.

To establish a claim for an insurer's violation of Chapter 542 of the Texas Insurance Code, a party must establish: (a) a "first-party claim" under an insurance policy; (b) the insurer's liability for that claim; and (c) the insurer's failure to follow one or more sections of the statute with respect in the handling of that claim. TEX. INS. CODE § 542.060; *see also GuideOne Lloyds*

*Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830 (Tex. App. – Fort Worth 2008, no pet) (citing *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001)). Great American asserts that Hulcher's claim is not a "first-party claim" for insurance to which Chapter 542's deadlines and damages apply. "A first-party claim is one in which an insured seeks recovery for the insured's own loss." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997). In contrast, a third-party claim is one in which an insured seeks coverage for injuries to a third party. *Hartman v. St. Paul Fire and Marine Ins. Co.*, 55 F. Supp. 2d 600, 603 (N.D. Tex. 1998). Hulcher seeks recovery for its own loss in this case, and thus, it is a first-party claim. Accordingly, Great American's motion for summary judgment is denied on this claim; and, again, due to the remaining fact issues regarding Union Pacific's sole negligence, Hulcher's motion for summary judgment on this ground is denied.

Hulcher also claims that it is entitled to pre- and post-judgment interest and attorneys' fees; however, because there is a fact issue remaining for consideration by the jury, the Court finds that Hulcher's motion for summary judgment is denied on these claims.

## CONCLUSION

Based on the foregoing, the Court finds that Defendant Great American Insurance Company's Motion for Summary Judgment (Dkt. #27) is hereby **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Partial Summary Judgment (Dkt. #31) is hereby **DENIED**.

**SIGNED this 25th day of June, 2015.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE